IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § § § **HDD ROTARY SALES, LLC** § § **DEBTOR.** § § § | **Case No. 11-38053** **Chapter 11** |

### HDD ROTARY SALES, LLC'S EXPEDITED MOTION FOR ORDER APPROVING (I) LETTER OF INTENT AND PURCHASER PROTECTION PROVISIONS, (II) SALE PROCEDURE AND <u>FORM OF NOTICE, AND (III) CERTAIN BID PROTECTIONS</u>

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE OUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE**

**HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MOTION ON WEDNESDAY, SEPTEMBER 28, 2011, AT 9:00 A.M. IN COURTROOM 404, 515 RUSK, HOUSTON, TX 77002**

**TO THE HONORABLE MARVIN ISGUR, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

HDD ROTARY SALES, LLC (the "Debtor-in-Possession" or "Debtor" or "HDD"), by and through its undersigned counsel, hereby files this Expedited Motion For Order Approving (i) Letter of Intent and Purchaser Protection Provisions, (ii) Sale Procedure and Form of Notice, And (iii) Certain Bid Protections (the "LOI Approval Motion"). In support thereof, HDD states:

### I. STATEMENT OF JURISDICTION AND VENUE

1. This Court has jurisdiction over this case and this motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2)(A), (D), (M) and (O).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. INTRODUCTION

3. On September 23, 2011, HDD filed a voluntary case for reorganization under

Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  No Trustee has been appointed, and HDD is a debtor-in-possession.

4.     Prior to the bankruptcy filing, Debtor had been negotiating for a sale of substantially all of its assets to Axon Tubular Products, Inc., a Texas corporation, and/or its assignee, which owned by and/or affiliated with Axon Energy Products, AS, a Norwegian private limited company ("Axon" or "Purchaser").

5.     Axon and the Debtor have reached an agreement on Axon's acquisition of the substantially all of the assets of the Debtor (the "Purchased Assets"), and to act as a "stalking horse" and as Debtor's DIP Lender pursuant to the terms of a DIP Credit Agreement  The Purchased Assets include, generally, all of the operating assets owned, leased or otherwise utilized by and in the Debtor's business, including, without limitation, its real property, intellectual property, patents, patent applications, fixed assets, general intangibles, including the real property and related business operations, such assets being more particularly described in Section 1 of the Letter of Intent ("LOI") attached hereto as **Exhibit "1"** and made a part hereof for all purposes.  All initially capitalized terms used herein shall have the same meaning assigned in the LOI.

6.     Contemporaneously with the filing of this Motion, the Debtor has filed an Expedited Motion For Interim Order (1) Authorizing Debtor-In-Possession to Obtain Financing Needed Prior to Final Hearing, Granting Security Interests and According Super Administrative Priority Status and Granting a Priming Lien as to Certain Abstract of Judgment Liens  (2) Affording Adequate Protection; and (3) Authorizing Debtor to Obtain Final Financing and Giving Notice of Final Hearing Pursuant to Bankruptcy Rule 4001(C)(2) ("Borrowing Motion").  The Debtor has also filed a Motion to Sell Substantially all of the Assets of the Debtor Free and Clear of Liens,

Claims, Security Interests and Encumbrances ("Sale Motion").

7. The Debtor intends to advertise the sale of the Purchased Assets in two local papers, and to consider Bids from a Qualified Bidder (as defined in the LOI) in accordance with the terms of the LOI.

8. If one or more timely Qualified Bids are received, an auction for the Purchased Assets will be conducted on (DATE TO BE DETERMINED), 2011, commencing at 10:00 a.m. Central Time at the offices of Pendergraft & Simon, 2727 Allen Parkway, Suite 800, Houston, Texas 77019.

9. Axon has offered to pay $3,600,000 (subject to adjustment) CASH for the Purchased Assets subject to the terms of the LOI.

10. This will be sufficient to pay-off the DIP Financing Facility, all Allowed secured claims (except any liens that are avoidable as a preference), administrative claims and priority claims, and will potentially make an approximately 10% distribution to the Debtor's unsecured creditors.

11. Axon is also willing to act as the Debtor's DIP lender in order to maintain the Debtor's business pending the bidding process and closing of a sale to Axon or another Qualified Bidder. By separate Motion to Authorize Interim and Final Borrowing, Debtor is requesting authority to borrow up to $400,000 from Axon on the terms and conditions of the DIP Credit Agreement. This should be sufficient bridge the Debtor to a closing with Axon or another Qualified Bidder.

12. The relief requested by the Debtor in this Motion and the companion motions filed on this date is in the best interests of the Debtor's estate.

### III.   BACKGROUND

13.   Debtor's business commenced in 2008, and currently comprises (i) tubular manufacturing, (ii) design of premium thread, and (iii) a distribution business, together with a patent pending application for the PTECH+ technology, short for the Performance Technology Plus, a new proprietary increased torque connection designed to outperform other dual shoulder connections in torsion, tension, and fatigue performance.

14.   Debtor's corporate offices, which are leased, are located at 3303 West Davis, Suite 100, Conroe, Texas 77304.

15.   Debtor's manufacturing facility, which is owned, is located at 13019 Crockett Martin Road, Conroe, Texas 77036, and consists of a 21.6994 acre tract of land and building (the "Manufacturing Facility").  Debtor's main lender, Midsouth Bank, N.A. ("Midsouth") has a first lien deed of trust on the Manufacturing Facility securing a loan balance of $606,252.54.  Debtor estimates that its Manufacturing Facility has a value of $1,500,000.00.  There are two judgments abstracted against the Manufacturing Facility, one in favor of Dobrowsky LLP, formerly Debtor's trial counsel, in the amount of $83,231.48, and one in favor of Gyrodata Inc. in the amount of $149,647.15. These abstracts, which were filed within 90 days of the Filing Date, appear to be preferences on their face in that they were recorded substantially after the antecedent dates of the respective judgments.

16.   Debtor has what it believes are collectible receivables in the amount of $136,936.25.  Debtor also owns equipment, which Debtor has booked at $1,693,192.36, inventory, which Debtor has booked at $808,947.73, and office equipment, furnishings, and supplies which Debtor has booked at $181,317.04.  Management of the Debtor places a current

fair market value on these assets at 65% of book value. Finally, Debtor owns a patent pending on the PTECH+ Premium Connection technology, the value of which is unknown. These assets are collateral for three loans outstanding with Midsouth, the balance of which total $1,720,170.96 ($996,006.94, $150,000.00 and $574,164.02). The real estate loan described above is also owing to Midsouth.

17. Finally, the Debtor has a loan at Post Oak Bank in Conroe, Texas, for approximately $400,000 which is secured by a certificate of deposit that has a current value of $401,489.05.

18. In addition to the above, the Debtor owes to the Internal Revenue Service employment related priority taxes totaling $199,927.06.

19. The Debtor's financial condition has continued to decline, and the only option the Debtor foresees is the sale of its assets to Axon or another Qualified Bidder. There are many reasons for the decline in Debtor's business, but principal among them is timing. Debtor commenced its business just as the crash was occurring in 2008. Also, Debtor was besieged with litigation over its technology and non-competition agreements with principal officers of the Debtor. It is hoped that by acting quickly, the Debtor can maximize recovery for its estate and to its unsecured creditors.

### IV. PROPOSED LOI AND RELIEF REQUESTED

20. The LOI provides, inter alia, for a Purchase Price of $3,600,000 CASH (subject to adjustment). As stated above, Debtor believes that, if reorganization costs can be minimized, the Debtor's unsecured creditors potentially will receive an approximate 10% cash distribution.

21. Once the LOI is approved, the Debtor intends to advertise the sale in two (2) local papers. The Debtor shall make the Bid Procedures attached hereto as **Exhibit "2"** available to

all interested buyers.

22.     Debtor requests that the Court approve the LOI, a copy of which is attached hereto as Exhibit "1", including the Purchaser Protection Provisions described in paragraph 12 of the LOI (including, without limitation, the Break-Up Fee or Termination Fee, and Reimbursable Expenses).

23.     Debtor further requests that it be authorized to enter into the LOI, which shall be binding on the Debtor in accordance with its terms.  As provided in paragraph 12 of the LOI, the Break-Up Fee and/or Termination or Termination Fee, and Reimbursable Expenses shall constitute administrative expenses of Seller and granted administrative expense priority pursuant to Section 503 of the Bankruptcy Code if and when due.

24.     Debtor further requests that the Bid Procedures attached hereto as **Exhibit "2"** be approved for dissemination to all interested purchasers, and that all prospective purchasers be obligated to comply with the Bid Procedures.

25.     Debtor further requests that it be authorized and directed to pay the Break-Up Fee or Termination Fee, and Reimbursable Expenses to Axon in accordance with the provisions of the LOI, without further action or order of this Court.

26.     Debtor requests entry of an order on this Motion in the form submitted with this Motion, which proposed order is made a part hereof for all purposes.

WHEREFORE, Debtor requests entry of the Order uploaded with this Motion, and requests such other and further relief as is just.

Respectfully submitted this 26th day of September 2011.

/s/ Leonard H. Simon
Leonard H. Simon, Esq.
TBN: 18387400; SDOT: 8200
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 737-8207 (Direct)
(832) 202-2810 (Direct Fax)
lsimon@pendergraftsimon.com
PROPOSED COUNSEL FOR DEBTOR

OF COUNSEL:

PENDERGRAFT & SIMON
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555 (Main)
(713) 868-1267 (Main Fax)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by electronic transmission to all registered ECF users appearing in the case on this 26th day of September 2011, including the U.S. Trustee. Further, this Motion and the Interim Order has been faxed and/or emailed to the creditors who appear on the Twenty Largest Unsecured Creditors' list filed with this Court and all Secured Creditors of the Debtor, being Post Oak Bank of Conroe, Midsouth and the holders of the Abstracts of Judgment.

/s/ Leonard H. Simon
Leonard H. Simon