IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>HDD ROTARY SALES, LLC<br><br>DEBTOR. | §<br>§<br>§<br>§   Case No. 11-38053<br>§   Chapter 11<br>§<br>§ |

**EMERGENCY MOTION (1) FOR INTERIM ORDER AUTHORIZING
USE OF CASH COLLATERAL, (2) SETTING A FINAL HEARING ON USE
OF CASH COLLATERAL PURSUANT TO BANKRUPTCY RULE 4001(b)(2)
AND (3) FOR FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE MARVIN ISGUR, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

**HDD ROTARY SALES, LLC** (the "Debtor-in-Possession" or "Debtor" or "HDD"), by and through its Chief Restructuring Officer, Wayne Fuquay, hereby files this Expedited Motion (1) For Interim Order Authorizing Use of Cash Collateral, (2) Setting a Final Hearing on Use of Cash

1 | Page

Collateral Pursuant to Bankruptcy Rule 4001(b)(2) and (3) For Final Order Authorizing Use of Cash Collateral.  In support thereof, HDD states:

### I. STATEMENT OF JURISDICTION AND VENUE

1. The Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334 and 157. These matters concern the administration of these bankruptcy estates; accordingly, the matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are 11 U.S.C. §§ 361 and 363 and Bankruptcy Rules 4001(b)(2), and 6004.

### II. INTRODUCTION

1. On September 23, 2011, HDD filed a voluntary case under Chapter 11 of the Bankruptcy Code.  Wayne Fuquay was appointed as the Chief Restructuring Officer ("CRO") of the Debtor by order entered on September 30, 2011, ECF Document 40.  As the CRO, the Court has granted Mr. Fuquay all rights, powers and responsibilities as a trustee in a chapter 11 case.

2. The CRO would ask this Court for an order permitting the Debtor to use cash collateral on an interim basis.  Debtor can show that during the next thirty days, with the use of cash collateral, the Debtor will generate over $220,000 in revenue/collectible receivables.  That will more than offset the budgeted amount of expenditures over the next thirty days.  Allowing the use of cash collateral will permit the Debtor over the next thirty days to arrange for the sale of its assets pursuant to a bid process and an auction.  Use of cash collateral is in the best interests of the estate.

### III. BACKGROUND

3. Debtor's business commenced in 2008, and currently comprises (i) a tubular manufacturing, (ii) designer of premium thread, and (iii) distribution business, together with a

patent pending application for the PTECH+ technology, short for the Performance Technology Plus, a new proprietary increased torque connection designed to outperform other dual shoulder connections in torsion, tension, and fatigue performance.

4. Debtor's corporate offices, which are leased, are located at 3303 West Davis, Suite 100, Conroe, Texas 77304.

5. Debtor's manufacturing facility, which is owned, is located at 13019 Crockett Martin Road, Conroe, Texas 77036, and consists of a 21.6994 acre tract of land and building (the "Manufacturing Facility"). Debtor's main lender, Midsouth Bank, N.A. ("Midsouth"), has a first lien deed of trust on the Manufacturing Facility securing a loan balance of $606,252.54.[1] Debtor estimates that its Manufacturing Facility has a value of $1,274,000.00. Midsouth's deed of trust was recorded on December 10, 2009, in the Official Public Records of Real Property at Montgomery County, Texas, under File No. 2009-112038 (the "Deed of Trust"). The Deed of Trust contains a "Mother Hubbard" clause such that it secures the other indebtedness owed by the Debtor to Midsouth described in the next paragraph. There are two judgments abstracted against the Manufacturing Facility, one in favor of Dobrowsky LLP, formerly Debtor's trial counsel, in the amount of $83,231.48, and one in favor of Gyrodata Inc. in the amount of $149,647.15. These abstracts, which were filed within 90 days of the Filing Date, appear to be preferences on their face in that they were recorded substantially after the dates of the respective judgments and within 90 days of the bankruptcy filing.

6. Debtor had, as of the Filing Date, (a) collectible receivables in the amount of $136,936.25; (b) cash in various bank accounts totaling $6,065.28; (c) equipment, which Debtor has booked at $1,693,192.36; (d) inventory, which Debtor has booked at $808,947.73; and (e) office equipment, furnishings, and supplies which Debtor has booked at $181,317.04.

---

[1] The original note was dated November 23, 2009, in the original principal amount of $700,000.00.

Management of the Debtor places a current fair market value on these assets at 65% of book value. Finally, Debtor owns a patent pending on the PTECH+ Premium Connection technology, the value of which is unknown. These assets are collateral for three loans outstanding with Midsouth, the balance of which total $1,720,170.96 ($996,006.94,[2] $150,000.00[3] and $574,164.02[4]) (this is in addition to the real estate loan described above).

7. The Debtor executed a Commercial Security Agreement in connection with the $1,000,000 Note contemporaneous on September 23, 2009. Said Commercial Security Agreement creates a blanket lien on all accounts receivable, business inventory, chattel paper, accounts, general intangibles, and contains a "Mother Hubbard Clause" as well. On October 1, 2009, Midsouth filed a UCC 1 Financing Statement (File No. 09-0027543777) perfecting its "Blanket Lien" on all accounts receivable and inventory.

8. The Debtor executed a Commercial Security Agreement in connection with the $850,000 Note on October 15, 2009. Said Commercial Security Agreement creates a blanket lien on all equipment and general intangibles, and contains a "Mother Hubbard Clause" as well. On October 20, 2009, Midsouth filed a UCC 1 Financing Statement (File No. 09-0029269007) perfecting its "Blanket Lien" on all equipment.

9. When the Debtor renewed the $1,000,000 note on March 23, 2011, the Debtor executed another Commercial Security Agreement. Said Commercial Security Agreement creates a blanket lien on all inventory, equipment, accounts and general intangibles.

10. In summary, Midsouth is owed a total amount of approximately $2,326,423.50 which is secured by the Manufacturing Facility, inventory, accounts receivable, equipment and

---

[2] The original note was dated September 23, 2009, in the original principal amount of $1,000,000.00, and was renewed on March 23, 2011.
[3] The original note was dated August __ , 2011, in the original principal amount of $150,000.00.
[4] The original note was dated October 15, 2011, in the original principal amount of $850,000.00.

general intangibles, as summarized below:

| Date of Original Note | Original Principal Amount | Approximate Balance as of Filing Date | Collateral | Value of Collateral |
|---|---|---|---|---|
| | | | Cash | $ 6,065.28 |
| 9/23/2009 | $1,000,000.00 | $ 996,006.94 | Inventory | $1,006,947.93 |
| 10/15/2011 | $ 850,000.00 | $ 574,164.02 | Receivables | $ 139,651.97 |
| 11/23/2009 | $ 700,000.00 | $ 606,252.54 | FF&E[5] | $1,218,431.11 |
| 8/00/2011 | $ 150,000.00 | $ 150,000.00 | Real Estate | $1,274,000.00 |
| TOTAL: | $2,700,000.00 | $2,326,423.50 | | $3,645,096.29 |

11.  Finally, the Debtor has a loan at Post Oak Bank in Conroe, Texas, for approximately $400,000 which is secured by a certificate of deposit that has a current value of $401,489.05.

12.  There are no other liens on Debtor's cash collateral other than Midsouth's liens.

13.  The Debtor's financial condition has continued to decline, and the only option the Debtor foresees is the sale of the company. There are many reasons for the decline in Debtor's business, but principal among them is timing. Debtor commenced its business just as the crash was occurring in 2008. Also, Debtor was besieged with litigation over its technology and non-competition agreements with principal officers of the Debtor. It is hoped that by acting quickly, the Debtor can maximize recovery to its estate and its unsecured creditors.

14.  Debtor would ask for the right to use cash collateral to fund continuing operations on a limited basis. Debtor has a one month budget attached which provides for the use of cash collateral to finish off its back log and wind down the affairs of the Debtor. The Debtor expects

---

[5] $1,874,509.40 (Equipment $1,693,192.36 + Furniture & Office Equipment $181,317.04) x .65.

for its assets and business to be sold pursuant to an auction within 60 days, at which time all continuing operational expenses will cease.

15.

## IV. RELIEF REQUESTED

16. Under 11 U.S.C. § 363(a) "cash collateral" is defined as follows:

"**(a)** In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552 (b) of this title, whether existing before or after the commencement of a case under this title."

17. Under 11 U.S.C. § 363(c)(2), the Debtor may not use, sell or lease cash collateral without the Court's authority or the secured creditor's consent. 11 U.S.C. § 363(e) allows the Court to grant this authority upon the provision of adequate protection.

18. The Debtor seeks to use cash collateral as that term is defined in section 363(a), in accordance with the one-month budget (the "Budget") attached hereto as **Exhibit "A"**.

19. The Debtor hereby requests that the Court approve the proposed Cash Collateral Order that has been uploaded with this Motion. The decretal paragraphs of the Cash Collateral Order are set forth below and define the terms of use of cash collateral proposed by the Debtor and adequate protection afforded to Midsouth:

   1. **Term and Extent of Cash Collateral Use.** The Debtor is authorized to use up to $139,651.97 in receivables plus $6,065.28 in cash (the "Cash Collateral"), as set forth in the Budget until the expiration of 30 days from the date of entry of this order. Without the prior written consent of the Midsouth, the Debtor acknowledges and agrees that: (A) with respect to the line items set forth for expenses or disbursements in the One-Month Budget, the Debtor shall not have a variance of more than twenty five (25%) of any such amount; (B) the Debtor shall deposit all Cash Collateral (including all Cash Collateral on hand and received in the future) in the Debtors' DIP Operating or Payroll Accounts to be

maintained at Midsouth; (C) the Debtor's requirement to segregate the Cash Collateral shall continue even if the Debtor's authority to use Cash Collateral is terminated in the future for any reason; including, but not limited to, the appointment of a trustee; and (D) during the pendency of this case, Debtor shall not use Cash Collateral other than in the ordinary course of business except as permitted herein or except to the extent Midsouth consents in writing prior to the use of such Cash Collateral.

2. **Replacement Liens.** As adequate protection, but only to the extent of the use of inventory, work in process, receivables and cash from and after the Petition Date as set forth herein, Midsouth is hereby granted, without any further action (a) a continuing, additional and replacement liens and first priority security interests in inventory, work in process, receivables and cash generated by the Debtor on a postpetition basis; and (b) a continuing, additional and replacement liens and first priority security interests in, to and against any and all proceeds of any and all of the foregoing, and all accessions or additions thereto, substitutions, renewals, improvements and replacement thereof, and proceeds of any insurance on or with respect to any of the foregoing (the "Replacement Liens"), but only as to the extent of inventory, work in process, receivables and cash used by the Debtor after the Petition Date.

3. **Additional Adequate Protection.** To the extent of the decline in the value of Midsouth's interest in inventory, work in process, receivables and cash as of the Petition Date, Midsouth is granted (a) an administrative claim against the Debtor, and (b) a lien against any unencumbered real or personal property of the Debtor.

4. **Additional Collateral.** The rights and obligations of the Debtor and the rights claims, security interests, liens and priorities of Midsouth arising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities granted under the prepetition loan documents, and are granted pursuant to 11 U. S. C. §§ 361, 362, and 363.

5. **Validity of Liens.** The Replacement Liens granted pursuant to this Order shall be deemed effective, valid and perfected as of the date of the entry of this Order without the necessity of the filing or lodging by or with any entity of any documents or instruments otherwise required to be filed or lodged under applicable non-bankruptcy law. This Order shall be deemed to be a security agreement for purposes of creation, attachment and perfection of Midsouth's Replacement Liens. The Replacement Liens shall be valid and perfected as against, and binding upon, the Debtor and its successors, including any trustee, receiver or similar successor, in this or any subsequent case under the Bankruptcy Code or in any insolvency or similar case or proceeding, and also upon any creditor of the Debtor who may have extended or may hereafter extend credit to the Debtor, or who may assert a claim in this or any subsequent case or

proceeding, whether or not notice of this Order or this case has been filed in any place or with any person, including any official of any governmental jurisdiction within which the Debtor's property is located, whether municipal, county, state, or federal.  Notwithstanding the above, Debtor shall cooperate with Midsouth to execute such documents and instruments and do such things as the bank reasonably requests to evidence and perfect the Replacement Liens, and the automatic stay is hereby modified to allow Midsouth to take such action as it may deem necessary to perfect the Replacement Liens.

6. **Binding Effect.**  The provisions of this Order shall be binding upon and inure to the benefit of the Midsouth and the Debtor, and their respective successors and assigns, including any trustee appointed in this or any superseding case under the Bankruptcy Code.

7. **Reservation of Rights.**  Nothing contained in this Order or otherwise is intended to prevent or prejudice the rights of the Midsouth to seek to terminate the automatic stay pursuant to 11 U.S.C. § 362, or take any other action it may deem necessary to protect its rights.  Nothing contained in this Order is intended to prevent the Debtor or any Creditors' Committee or creditor to investigate and challenge the validity, priority and extent of the liens and indebtedness of Midsouth.

### IV.     INTERIM APPROVAL SHOULD BE GRANTED

20. The Debtor requires immediate access to Cash Collateral to, among other things, pay necessary operating expenses.

21. The immediate and temporary approval of the use of the inventory, work in process, receivables and cash proposed in the Agreed Cash Collateral Order is consistent with the requirements for: (i) maintaining the going concern value of the Debtor's business operations; (ii) the law under Bankruptcy Code §§ 363 (regarding the use of cash collateral) and 361 (regarding adequate protection); and (iii) facilitating a successful reorganization of the Debtor's business under Chapter 11.  The relief requested is in the best interests of the Debtor's estate.

22. The failure to authorize the immediate use of the Cash Collateral will result in a swift and significant deterioration of the Debtor's business, and could ultimately result in the

cessation and liquidation of the Debtor's business. Debtor requests that, pending the final hearing on this Motion, the Court authorize the Debtor to immediately use inventory, receivables and cash in the amounts set forth in the Budget pursuant to the terms of the Agreed Cash Collateral Order and the attached two-week budget.

WHEREFORE, the Debtor prays for the immediate use of Cash Collateral pursuant to the terms of the proposed Agreed Cash Collateral Order submitted with this Motion, and further prays for such other and further relief as is just.

Respectfully submitted this 6th day of October 2011.

/s/ Leonard H. Simon
**Leonard H. Simon, Esq.**
TBN: 18387400; SDOT: 8200
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 737-8207 (Direct)
(832) 202-2810 (Direct Fax)
lsimon@pendergraftsimon.com
**PROPOSED COUNSEL FOR DEBTOR**

**OF COUNSEL:**
**PENDERGRAFT & SIMON**
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555 (Main)
(713) 868-1267 (Main Fax)

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing has been served by electronic transmission to all registered ECF users appearing in the case on this 6th day of October 2011, including the U.S. Trustee. Further, this Motion and the Order approving same has been faxed and/or emailed on this date to the creditors who appear on the Twenty Largest Unsecured Creditors' list filed with this Court and all Secured Creditors of the Debtor, being Post Oak Bank of Conroe, Midsouth and the holders of the Abstracts of Judgment. Further on this date, this Motion and the Order approving same has been served by fax on the Internal Revenue Service through Rita Galvan, in the Bankruptcy Section, Houston, Texas.

/s/ Leonard H. Simon
Leonard H. Simon

# **EXHIBIT "A"**

CASE NAME: HDD ROTARY SALES, LLC.
CASE NUMBER: 11-38053

| CASH RECEIPTS AND DISBURSEMENTS | 7-Oct | 14-Oct | 21-Oct | 28-Oct | Total |
|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF PERIOD* | $24,100.00 | $200,107.90 | $95,797.60 | $82,597.60 | |
| RECEIPTS: | | | | | |
| 2. COLLECTION OF POSTPETITION RECEIVABLES | | 14,600.00 | 10,000.00 | 27,340.00 | 51,940.00 |
| 3. COLLECTION OF PREPETITION RECEIVABLES | 20,843.75 | 5,000.00 | 20,000.00 | 10,000.00 | 55,843.75 |
| 5. NET SALES OF PIPE | 174,423.00 | | | | 174,423.00 |
| 6. OTHER Sales of Scrap | | | | | |
| TOTAL RECEIPTS | 195,266.75 | 19,600.00 | 30,000.00 | 37,340.00 | 282,206.75 |
| DISBURSEMENTS: | | | | | |
| 7. NET PAYROLL - HOURLY | 2907.33 | 9,961.60 | | 10,961.60 | 23,830.53 |
| 8. EMPLOYER TAXES - HOURLY | 207.74 | 762.06 | | 838.56 | 1,808.36 |
| 9. SALARIED PAYROLL - NET | 5,111.00 | 19,211.00 | | 19,211.00 | 43,533.00 |
| 10. EMPLOYER TAXES - SALARIED PAYROLL | 408.89 | 1,469.64 | | 1,469.64 | 3,348.17 |
| 11. Contract Labor | | | | | 0.00 |
| 12. Office Rent | | | | 7,900.00 | 7,900.00 |
| 13. AT&T T1 line (INTERNET) | | 2,387.00 | | | 2,387.00 |
| 14. TELEPHONE - AT&T | | | 3,200.00 | 3,200.00 | 6,400.00 |
| 15. ELECTRICY - | | | 2,600.00 | | 2,600.00 |
| 16. GAS - CENTERPOINT | | | | | 0.00 |
| 17. WATER - CITY OF HOUSTON | 1,621.00 | | | 500.00 | 2,121.00 |
| 18. WASTE REMOVAL - REPUBLIC WASTE | 200.00 | | 200.00 | | 400.00 |
| 19. AUTO, INDUSTRIAL & PROPERTY INSURANCE | | 9,419.00 | | | 9,419.00 |
| 20. INVENTORY PURCHASES | 5,000.00 | 75,000.00 | 35,000.00 | 10,000.00 | 125,000.00 |
| 21. Lease VEHICLES | | | | 9,671.00 | 9,671.00 |
| 22. REPAIRS, MAINTENANCE & SUPPLIES | 88.00 | | | | 88.00 |
| 23. OFFICE Supplies | | 200.00 | 200.00 | 100.00 | 500.00 |
| 24. TOOLING EXPENSE | | 2,000.00 | 2,000.00 | 1,000.00 | 5,000.00 |
| 25. FREIGHT and Trucking | 0.00 | 3,500.00 | 0.00 | 4,000.00 | 7,500.00 |
| 26. CLEARENCE OF PREPTITION CHECKS | 3,714.89 | | | | 3,714.89 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 19,258.85 | 123,910.30 | 43,200.00 | 68,851.80 | 255,220.96 |
| 27. U.S. TRUSTEE FEES Estimate | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 28. OTHER REORG Expense | 0.00 | | | | 0.00 |
| TOTAL DISBURSEMENTS | 19,258.85 | 123,910.30 | 43,200.00 | 68,851.80 | 255,220.96 |
| 29. NET CASH FLOW | 176,007.90 | -104,310.30 | -13,200.00 | -31,511.80 | 26,985.79 |
| 30. CASH - END OF PERIOD | $200,107.90 | $95,797.60 | $82,597.60 | $51,085.79 | |

The DIP line of credit will be drawn down $100,000 so that retainers to the CRO and his counsel can be made, as per court order: $50,000 to CRO; and $50,000 to CRO's legal counsel.