

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/27/2011

| | | |
|---|---|---|
| IN RE: | § § | |
| HDD ROTARY SALES, LLC | § § | Case No. 11-38053 |
| DEBTOR. | § § § | Chapter 11 |

## AGREED ORDER AUTHORIZINGUSE OF CASH COLLATERAL, (2) SETTING A FINAL HEARING ON USE OF CASH COLLATERAL

**On October 6, 2011,** HDD ROTARY SALES, LLC (the "Debtor-in-Possession" or "Debtor" or "HDD"), filed an Expedited Motion (1) For Interim Order Authorizing Use of Cash Collateral, (2) Setting a Final Hearing on Use of Cash Collateral Pursuant to Bankruptcy Rule 4001(b)(2)and (3) For Final Order Authorizing Use of Cash Collateral.ECF Document 52.On October 7, 2011, the Court signed an Agreed Order Authorizing Interim Use of Cash Collateral, (2) Setting a Final Hearing on Use of Cash Collateral Pursuant to Bankruptcy Rule 4001(b)(2). ECF Document 53. The Debtor and its major secured creditor, Midsouth Bank, N.A. ("Midsouth") now wish to finalize the cash collateral arrangement. In support thereof, HDD and Midsouthstate:

### I.   STATEMENT OF JURISDICTION AND VENUE

1.   The Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334 and 157. These matters concern the administration of these bankruptcy estates; accordingly, the matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§ 361 and 363 and Bankruptcy Rules 4001(b)(2), and 6004.

## II.   BACKGROUND

2. Debtor and Midsouth hereby incorporate the recitations in paragraphs 2-14 of the Interim Order as though fully set forth herein.

## III.   BASIS FOR RELIEF REQUESTED

3. Under 11 U.S.C. § 363(a) "cash collateral" is defined as follows:

> "(a)In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title."

4. Under 11 U.S.C. § 363(c)(2), the Debtor may not use, sell or lease cash collateral without the Court's authority or the secured creditor's consent. 11 U.S.C. § 363(e) allows the Court to grant this authority upon the provision of adequate protection.

BASED ON THE ABOVE FINDINGS AND CONCLUSIONS, IT IS ORDERED THAT:

1. **Term and Extent of Cash Collateral Use.**

    The Debtor is authorized to use the Cash Collateral, as set forth in periodic Budgets to be submitted to Midsouth, with copies to counsel for the Creditors' Committee and to the Office of the U.S. Trustee, until February 28, 2012, unless sooner terminated as provided herein, Budgets for no more than thirty (30) days in advance shall be submitted by the Debtor to counsel for Midsouth, and served as provided herein, no later than the Tuesday preceding the expiration of the prior Budget period. Should Midsouth or the Creditors' Committee object to a proposed Budget, Midsouth or the Creditors' Committee shall notify the Debtor of its objections and the Debtor shall immediately request an emergency hearing from the Court, and the Debtor's authority to use cash collateral will only extend through the end of the prior Budget period unless authorized by the Court to use cash collateral beyond the end of that Budget period. In the event that authorization to use Cash Collateral beyond the prior Budget period is not obtained, Debtor will immediately cease to use the Cash Collateral of MidSouth. The form of the budgets shall be as set forth on Exhibit "A" hereto.

2. **Replacement Liens.**

   As adequate protection, but only to the extent of the use of inventory, work in process, receivables and cash from and after the Petition Date as set forth herein, Midsouthis hereby granted, without any further action (a) a continuing, additional and replacement liens and first priority security interests in inventory, work in process, receivables and cash generated by the Debtor on a postpetition basis; and (b) a continuing, additional and replacement liens and first priority security interests in, to and against any and all proceeds of any and all of the foregoing, and all accessions or additions thereto, substitutions, renewals, improvements and replacement thereof, and proceeds of any insurance on or with respect to any of the foregoing (the "Replacement Liens"), but only as to the extent of inventory, work in process, receivables and cash used by the Debtor after the Petition Date.

3. **Additional Adequate Protection.**

   To the extent of the decline in the value of Midsouth's interest in inventory, work in process, receivables and cash as of the Petition Date, Midsouth is granted (a) a first priority administrative claim under 11 U.S.C. §§ 503(b) against the Debtor, and (b) a first priority lien against any unencumbered real or personal property of the Debtor.

4. **Additional Collateral.**

   The rights and obligations of the Debtor and the rights claims, security interests, liens and priorities of Midsoutharising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities granted under the prepetition loan documents, and are granted pursuant to 11 U. S. C. §§ 361, 362, and 363.

5. **Validity of Liens.**

   The Replacement Liens granted pursuant to this Order shall be deemed effective, valid and perfected as of the date of the entry of this Order without the necessity of the filing or lodging by or with any entity of any documents or instruments otherwise required to be filed or lodged under applicable non-bankruptcy law. This Order shall be deemed to be a security agreement for purposes of creation, attachment and perfection of Midsouth's Replacement Liens. The Replacement Liens shall be valid and perfected as against, and binding upon, the Debtor and its successors, including any trustee, receiver or similar successor, in this or any subsequent case under the Bankruptcy Code or in any insolvency or similar case or proceeding, and also upon any creditor of the Debtor who may have extended or may hereafter extend credit to the Debtor, or who may assert a claim in this or any subsequent case or proceeding, whether or not notice of this Order or this case has been filed in any place or with any person, including any official of any governmental jurisdiction within which the Debtor's property is located, whether

municipal, county, state, or federal. Notwithstanding the above, Debtor shall cooperate withMidsouth to execute such documents and instruments and do such things as the bank reasonably requests to evidence and perfect the Replacement Liens, and the automatic stay is hereby modified to allow Midsouthto take such action as it may deem necessary to perfect the Replacement Liens.

6. **Binding Effect.**

The provisions of this Order shall be binding upon and inure to the benefit of the Midsouth and the Debtor, and their respective successors and assigns, including any trustee appointed in this or any superseding case under the Bankruptcy Code.

7. **Reservation of Rights.**

Nothing contained in this Order or otherwise is intended to prevent or prejudice the rights of the Midsouth to seek to terminate the automatic stay pursuant to 11 U.S.C.§ 362, or take any other action it may deem necessary to protect its rights.

8. **Validity, Priority and Extent of Liens of Midsouth.**

The Debtor has had an opportunity to investigate the validity, priority and extent of the liens and indebtedness of Midsouth and has concluded Midsouth holds a valid first priority security interest in those certain assets of the Debtor specified in Midsouth's Motion to Prohibit Use of Cash Collateral (Docket # 43) (the "Midsouth Prepetition Collateral"). Nothing contained in this Order is intended to prevent the Creditors' Committee or any creditor to investigate and challenge the validity, priority and extent of the Midsouth Prepetition Collateral, provided that any such challenge shall be filed with this Court within thirty (30) days after entry of this order or Midsouth shall be conclusively determined to hold a valid first priority security interest in the Midsouth Prepetition Collateral.

Signed this 27 day of October 2011.

_____
HONORABLE MARVIN ISGUR,
CHIEF UNITED STATES BANKRUPTCY JUDGE

**AGREED TO:**

| | | |
|---|---|---|
| _/s/ Leonard H. Simon_ | /s/ Christopher Adams | /s/ Gary W. Coker |
| **Leonard H. Simon, Esq.** | **Christopher Adams, Esq.** | **Gary W. Coker, Esq.** |
| TBN: 18387400; SDOT: 8200 | TBN: 24009857 | GermerGertz, L.L.P. |
| The Riviana Building | Okin Adams & Kilmer LLP | P.O. Box 4915 |
| 2777 Allen Parkway, Suite 800 | 1113 Vine Street Suite 201 | Beaumont, Texas 77704 |
| Houston, Texas 77019 | Houston, TX 77002 | (409) 654-6700 phone |
| (713) 737-8207 (Direct) | 713-228-4100 | (409) 835-2115 fax |
| (832) 202-2810 (Direct Fax) | 888-865-2118 (fax) | gcoker@germer.com |
| lsimon@pendergraftsimon.com | cadams@oakllp.com | **ATTORNEY IN CHARGE FOR MIDSOUTH BANK, N.A.** |
| **ATTORNEY IN CHARGE FOR DEBTOR** | **PROPOSED ATTORNEY IN CHARGE FOR UNSECURED CREDITORS' COMMITTEE** | |

# EXHIBIT "A"

HDD Rotary Sales, LLC

| Current Assets | 9/23/2011 | 10/27/2011 | Postpetition Liabilities | 9/23/2011 | 10/27/2011 |
|---|---|---|---|---|---|
| Cash | $7,873.82 | $140,600.78 | DIP Line of Credit | $0.00 | $100,000.00 |
| HDD Deposit in Kind With Tejas | $0.00 | $88,944.00 | Accounts Payable | $0.00 | $29,964.55 |
| Security Deposits | $10,030.00 | $10,030.00 | Total: | $0.00 | $29,964.55 |
| Accounts Receivbable | $139,651.97 | $181,735.70 | | | |
| Inventory | $1,006,947.93 | $875,872.72 | | | |
| Total | $1,164,503.72 | $1,297,183.20 | | | |

**Receivable Adjustment for Pepetition Tiger Invoices**

$297,095.70  - Receivables on Company's Books as of 10/27
-$100,000.00  - Tiger prepetition royalties receivable subject to offset against prepetition Tiger payable
-$15,360.00  - Tiger claims that Invoice 2011-0253 for $15,360.00 is a prepetition receivable
$181,735.70       subject to offset against prepetition Tiger payable

**Inventory Adjustment for Pepetition Tiger Invoices**

-120,000.00 Deposit for Pipe at Tejas offset by $88,944.00 of inventory stored at Tejas

CASE NAME: HDD ROTARY SALES, LLC.
CASE NUMBER: 11-38053

| CASH RECEIPTS AND DISBURSEMENTS | Week Beginning 9/23/2011 Actual | Week Beginning 9/30/2011 Actual | Week Beginning 10/7/2011 Actual | Week Beginning 10/14/2011 Actual | Week Beginning 10/21/2011 Actual | Week Beginning 10/28/2011 Projected | Week Beginning 11/04/2011 Projected |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF PERIOD | $7,873.82 | $21,653.88 | $220,732.29 | $241,655.64 | $729,959.19 | $152,472.79 | $108,897.24 |
| RECEIPTS: | | | | | | | |
| 3. PREPETITION RECEIVEABLE COLLECTIONS | 24,100.00 | 20,843.75 | | | 27,234.00 | 10,957.86 | 5,410.00 |
| 4. POST PETITION RECEIVABLE COLLECTIONS | | | | 686,779.66 | 32,902.88 | 51,912.56 | 5,171.00 |
| 5. DRILLTUBE DEPOSIT | | 174,422.80 | | | | | |
| 6. DIP LOAN ADVANCE | | | 100,000.00 | | | | |
| 7. OTHER DEPOSITS | 921.70 | 7,011.86 | | | | | |
| TOTAL RECEIPTS | 25,021.70 | 202,278.41 | 100,000.00 | 686,779.66 | 60,136.88 | 62,870.42 | 10,581.00 |
| DISBURSEMENTS: | | | | | | | |
| 8. NET PAYROLL - HOURLY | | | 2,907.33 | 11,614.07 | | 9,997.08 | |
| 9. EMPLOYER TAXES - HOURLY | | | 446.04 | 1,089.92 | | 983.57 | |
| 10. SALARIED PAYROLL - NET | | | 5,110.93 | 32,202.36 | | 24,633.30 | |
| 11. EMPLOYER TAXES - SALARIED PAYROLL | | | 831.12 | 3,078.23 | | 2,519.04 | |
| 12. CHILD SUPPORT, 401K, DISABILITY & Life | | | | 1,075.38 | 108.33 | 1,951.66 | |
| 13. Contract Labor | | | 4,131.63 | 5,536.72 | 84.00 | 2,500.00 | |
| 14. Office Rent | | | | | 8,366.59 | | 7,625.00 |
| 15. AT&T T1 line (INTERNET) | | | 3,165.46 | | 146.49 | 3,318.67 | |
| 16. TELEPHONE - AT&T | | | | 8532.43 | | 3,286.77 | |
| 17. ELECTRICY - | | | 2,152.01 | | 2,573.75 | | |
| 18. TRAVEL EXPENSES | | | 3,863.89 | 4,888.29 | 318.73 | 4,000.00 | 1,500.00 |
| 19. BANK SERVICE FEES | | | 30.00 | 65.00 | 30.00 | 30.00 | 30.00 |
| 20. WASTE REMOVAL - REPUBLIC WASTE | | | | | 364.06 | | |
| 21. AUTO, INDUSTRIAL & PROPERTY INSURANCE | | | 9,490.92 | | 5,935.71 | 1,475.88 | 2,079.33 |
| 22. INVENTORY PURCHASES | | 2,700.00 | 46,000.00 | 63,850.00 | 596,293.28 | 15,000.00 | 25,000.00 |
| 21. LEASE VEHICLES | 7,526.75 | | | | | | |
| 22. REPAIRS, MAINTENANCE & SUPPLIES | | 500.00 | 947.32 | 1,194.00 | 2,381.72 | 1,500.00 | 750.00 |
| 23. OFFICE SUPPLIES/SALES TAX | | | | 3,326.44 | 695.62 | 250.00 | 250.00 |
| 24. TOOLING EXPENSE | | | | 2,023.27 | | 3,500.00 | 1,500.00 |
| 25. FREIGHT AND TRUCKING | | | | | | 1,500.00 | 2,500.00 |
| 26. CLEARENCE OF PREPTITION CHECKS | 3,714.89 | | | | | | |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 11,241.64 | 3,200.00 | 79,076.65 | 138,476.11 | 617,298.28 | 76,445.97 | 41,234.33 |
| 27. PROFESSIONAL FEE RETAINERS | | | | 60,000.00 | 20,325.00 | 30,000.00 | - |
| TOTAL DISBURSEMENTS | 11,241.64 | 3,200.00 | 79,076.65 | 198,476.11 | 637,623.28 | 106,445.97 | 41,234.33 |
| 31. NET CASH FLOW | 13,780.06 | 199,078.41 | 20,923.35 | 488,303.55 | -577,486.40 | -43,575.55 | -30,653.33 |
| 32. CASH - END OF PERIOD | $21,653.88 | $220,732.29 | $241,655.64 | $729,959.19 | $152,472.79 | $108,897.24 | $78,243.91 |

* Does not include Deposit in Kind at Tejas for Tool Joint sets approx $88,000